1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  MELANIE L. PROCTOR (CSBN 228971)
   Melanie.Proctor@usdoj.gov
4  Assistant United States Attorney

5   450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
6   Telephone: (415) 436-6730
    FAX: (415) 436-6927

7  Attorneys for Defendants

8

                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

   AZIN MORTAZAVI,                    )    No. C 07-3768 SI
12                                    )
                    Plaintiffs,       )
13                                    )
        v.                            )    DEFENDANTS' MOTION FOR
14                                    )    SUMMARY JUDGMENT
   ROSEMARY MELVILLE, District Director )
15 USCIS San Francisco District Office; )  Date:      November 30, 2007
   EMILIO T. GONZALEZ, Director, USCIS; )  Time:      9:00 a.m.
16 MICHAEL CHERTOFF, Secretary,       )    Courtroom: 10, 19th Floor
   Department of Homeland Security;   )
17 PETER D. KEISLER, Attorney General, )
   Department of Justice              )
18                                    )
                    Defendants.       )
19  _____  )

20                    **I.  NOTICE OF MOTION**

21       PLEASE TAKE NOTICE THAT on November 30, 2007, at 9:00 a.m., before the Honorable

22 Susan Illston, Courtroom No. 10, 450 Golden Gate Avenue, San Francisco, California 94102,

23 Defendants Rosemary Melville, et al., by their attorneys, Scott N. Schools, United States Attorney

24 for the Northern District of California, and Melanie L. Proctor, Assistant U.S. Attorney, will move

25 this Court for an order granting summary judgment in Defendants' favor.  Defendants' Motion is

26 based on this notice, the points and authorities in support of this motion, the declaration of Ronald

27 Nelson, the pleadings on file in this matter, and on such oral argument as the Court may permit.

28 ///

DEFENDANTS' MOTION
No. C 07-3768 SI                        1

**1**

## II.    INTRODUCTION

**2**    Plaintiff Azin Mortazavi ("Plaintiff") asks this Court to issue a writ of mandamus,

**3** compelling Defendants reach a decision on her application for adjustment of status which has been

**4** pending for less than two years.  She also asks the Court to find that Defendants have violated the

**5** Administrative Procedure Act ("APA"), and to grant relief under the Declaratory Judgment Act.

**6** Plaintiff's application remains pending because her name check is not yet complete.  Additionally,

**7** Plaintiff's name check has been pending less than two years.  The facts are undisputed, and

**8** Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants respectfully ask

**9** this Court to grant their motion for summary judgment.

**10**

## III.    BACKGROUND

**11**    On January 9, 2006, Plaintiff filed an I-485 application for adjustment of status, based on her

**12** marriage to a United States citizen.  See Declaration of Ronald Nelson, pp. 6-7 ¶ 19 (attached as

**13** Exh. A).  Plaintiff's application is ready to be adjudicated except for Plaintiff's pending background

**14** and security check  Id.   Plaintiff filed the instant Complaint on July 23, 2007, just over eighteen

**15** months after applying for adjustment of status.

**16**

## IV.    GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

**17**    A.    LEGAL STANDARD

**18**    Summary judgment is appropriate when the "pleadings, depositions, answers to

**19** interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**20** genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

**21** of law." Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidence for a

**22** reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477

**23** U.S. 242, 248-49 (1986).  A fact is material if the fact may affect the outcome of the case.  See id.

**24** at 248.  The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the

**25** court may not weigh the evidence or make credibility determinations, and is required to draw all

**26** inferences in a light most favorable to the non-moving party."  Freeman v. Arpaio, 125 F.3d 732,

**27** 735 (9th Cir. 1997).  A principal purpose of the summary judgment procedure is to identify and

**28** dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

1     B.    ADJUSTMENT OF STATUS

2          Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes

3     the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent

4     residence status certain aliens who have been admitted into the United States.  Adjustment of status

5     is committed to the Secretary's discretion as a matter of law.  Section 1255(a) expressly provides:

6          The status of an alien who was inspected and admitted or paroled into the United
          States . . . may be adjusted by the [Secretary], in his discretion and under such
7          regulations as he may prescribe, to that of an alien lawfully admitted for permanent
          residence[.]

8

9     8 U.S.C. 1255(a) (emphasis added).  An applicant for adjustment of status must meet three

10    requirements: she must apply for such status, be eligible to receive an immigrant visa, and the visa

11    must be immediately available to her at the time she applies.  Id.  Significantly, the statute does not

12    set forth any time frame in which a determination must be made on an application to adjust status.

13    In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set

14    forth a time frame for adjudication, and allow discretion in how to conduct the adjudication.  See

15    8 C.F.R. § 245 et seq.

16         Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and

17    Immigration Services ("USCIS") conducts several forms of security and background checks to

18    ensure that the alien is eligible for the benefit sought and that she is not a risk to national security

19    or public safety.  See Exh. A, p. 1 ¶ 3.  USCIS also conducts investigations into the bona fides of

20    petitions and applications that have been filed, in order to maintain the integrity of the application

21    process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a)

22    (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation

23    [("FBI")] and the Central Intelligence Agency and with other internal security officers of the

24    Government for the purpose of obtaining and exchanging information for use in enforcing the

25

26

27         [1]On March 1, 2003, the Department of Homeland Security and its United States Citizenship
      and Immigration Services assumed responsibility for the adjustment program.  6 U.S.C. § 271(b).
28    Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary
      of Homeland Security.  6 U.S.C. § 551(d).

1  provisions of this chapter in the interest of the internal and border security of the United States").

2  These checks currently include extensive checks of various law enforcement databases, including

3  the FBI. See Exh. A, p. 2 ¶ 4.

4      The FBI's name check process is quite complex. See Eldeeb v. Chertoff, et al., No. 07-cv-

5  236-T, 2007 WL 2209231, at *4 (M.D. Fla. July 30, 2007).  Name checks are performed at the

6  request of a variety of organizations, including the federal judiciary, friendly foreign police and

7  intelligence agencies, and state and local governments. Id. at *3. When the FBI conducts a name

8  check, the name is checked against the FBI's Universal Index, in a four-stage process. Id. at *3.

9  Generally, the FBI employs a first-in, first-served protocol. Id. at *4. However, when an applicant's

10  name check requires a review of numerous FBI records and files, the name check may require

11  additional time until all responsive records are located and reviewed. Id. USCIS determines which

12  name checks are to be expedited.  See USCIS Clarifies Criteria to Expedite FBI Name Check

13  (attached as Exh. B). An expedited name check proceeds to the front of the queue, in front of others

14  awaiting processing. Eldeeb, 2007 WL 2209231, at *5.

15      The FBI processed more than 3.4 million name checks during fiscal year 2006. Id. at *3.

16  The FBI is working as expeditiously as possible to reduce the small percentage of immigration name

17  checks for which a backlog exists.  This backlog results from the vast number of requests the FBI

18  receives from USCIS and other customers, as well as the requirement for enhanced security

19  measures existing since September 11, 2001. Id. at *5. A variety of factors play into processing

20  times, including "hits," common names, and expedited name checks. Id. at *4.

21      C.    RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT
           AND THE MANDAMUS ACT

22

23      Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where

24  "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2). Agency action,

25  as defined under the APA, also includes "a failure to act."  5 U.S.C. § 551(13).  Under 5 U.S.C.

26  § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed."  The

27  elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in

28  carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of

DEFENDANTS' MOTION
No. C 07-3768 SI                              4

1  prejudice to one of the parties.  Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004);

2  Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

3       The APA does not provide an independent jurisdictional basis.  Califano v. Sanders, 430

4  U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988).

5  Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise

6  established.  Staacke, 841 F.2d at 282.  Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201

7  ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range

8  of remedies available in federal courts.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-

9  72 (1950).

10       Mandamus is an extraordinary remedy.  See Cheney v. United States District Court for

11  the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied Chemical

12  Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).  The United States Supreme Court has stated that

13  "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the

14  defendant owes him a clear nondiscretionary duty."  Heckler v. Ringer, 466 U.S. 602, 616 (1984);

15  see also Kildare v. Saenz,  325 F.3d 1078,  1084 (9th Cir. 2003).

16                              **V.  ANALYSIS**

17       A.       DEFENDANT KEISLER SHOULD BE DISMISSED

18       Courts in this district have recognized that since March 1, 2003, the Department of

19  Homeland Security has been the agency responsible for implementing the Immigration and

20  Nationality Act.  See 6 U.S.C. §§ 271(b)(5), 557; Clayton v. Chertoff, et al., No. 07-cv-02781-CW,

21  slip. op., at 4-7 (N.D. Cal. Oct. 1, 2007);  Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL

22  2070325, at *6 (N.D. Cal. July 13, 2007); Dmitriev v. Chertoff, No. C 06-7677 JW, 2007 WL

23  1319533, at *4 (N.D. Cal. May 4, 2007).  Accordingly, the only relevant Defendants here are those

24  within  the Department of Homeland Security, and Defendant Peter D. Keisler, as United States

25  Attorney General, should be dismissed.

26  ///

27  ///

28  ///

1    B.    THE COURT LACKS JURISDICTION TO COMPEL PROCESSING WITHIN A
             CERTAIN TIME FRAME

2

3    For the record, Defendants argue that the Court lacks jurisdiction to compel processing of

4    Plaintiff's application with a certain time frame.[2]   District courts that have concluded that the

5    Mandamus Act vests the courts with subject matter jurisdiction have too firmly rested their analysis

6    upon an inapplicable provision in 8 C.F.R. § 245.2(a)(5)(i).  See, e.g., Yu v. Chertoff, No. C06-7878

7    CW, 2007 WL 1742850, at *2 (N.D. Cal. June 14, 2007) (finding that 8 C.F.R. § 245.2(a)(5)

8    requires a decision); Quan v. Chertoff, No. C06-7881 SC, 2007 WL 1655601, at *3 (N.D. Cal. June

9    7, 2007) (same); Fu v. Gonzales, No. C07-0207 EDL, 2007 WL 1742376, at *3 n.2 (N.D. Cal. May

10   22, 2007) (same).  The non-discretionary nature of § 245.2's notice requirement does not extend to

11   the pre-adjudication processing of which Plaintiff here complains, a process that is statutorily

12   defined as discretionary.   8 U.S.C. § 1252(a)(2)(B).   The pre-adjudication investigation and

13   processing are also discretionary beyond the language of the controlling statute.

14   The background investigation is discretionary as a matter of common sense.  The agencies

15   must be able to make determinations in how to proceed with an investigation on a case-by-case

16   basis, once enlightened by the information received at points along the investigative process.  See

17   e.g., 8 C.F.R.§ 245.6 (an "interview may be waived . . . when it is determined by the Service that

18   an interview is unnecessary"); id. at § 103.2(b)(7) ("[The Service] may direct any necessary

19   investigation") (emphasis added); id. at § 103.2(b)(18) ("A district director may authorize

20   withholding adjudication").  The use of "may," in regulations that are more specifically addressed

21   to the processing of adjustment applications than § 245.2's provision for final adjudication and the

22   notice of such final agency determination, provides discretion to the manner of the processing of

23   applications beyond that expressed in 8 U.S.C. § 1252(a)(2)(B).  Thus, the process of adjudication

24   is completely discretionary.  See Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 690 (9th

25   Cir. 2003).  Accordingly, the Court lacks jurisdiction to compel USCIS to render a decision on

26   Plaintiffs' applications.

27

28   [2]Defendants acknowledge this Court's decision in Xiao v. Gonzales, 2007 WL 2688464
     (Sept. 10, 2007) (finding the Court has jurisdiction).

DEFENDANTS' MOTION
No. C 07-3768 SI                                  6

1    Furthermore, mandamus is reserved for those situations in which the plaintiff's claim is clear

2  and certain.  Kildare, 325 F.3d at 1078.   Here, as explained below, because Plaintiff has failed to

3  establish that action on her application has been unreasonably delayed, she has failed to show that

4  her claim is so clear and certain that mandamus is justified.  Furthermore, USCIS has exercised its

5  discretion in determining which name checks should be expedited.  See Exh. B.  Plaintiff's case

6  meets none of these criteria.

7          C.      THE DELAY IS REASONABLE

8          Plaintiff has failed to establish that a delay of approximately eighteen months, as alleged in

9  her Complaint, constitutes unreasonable delay.  See Clayton, No. 07-cv-02781-CW, slip. op., at 13

10  (granting defendants' motion for summary judgment where delay did not exceed two years).  To

11  determine whether a delay is egregious, such that relief under the APA is warranted, several circuits

12  have adopted the six-part test first articulated in Telecomm. Research and Action Ctr. v. FCC, 750

13  F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"). The six considerations outlined in TRAC are:

14          (1) the time agencies take to make decisions must be governed by a rule of reason;
          (2) where Congress has provided a timetable or other indication of the speed with
15          which it expects the agency to proceed in the enabling statute, that statutory scheme
          may supply content for this rule of reason;
16          (3) delays that might be reasonable in the sphere of economic regulations are less
          tolerable when human health and welfare are at stake;
17          (4) the court should consider the effect of expediting delayed action on agency
          activities of a higher or competing priority;
18          (5) the court should also take into account the nature and extent of the interests
          prejudiced by delay;
19          (6) the court need not find any impropriety lurking behind agency lassitude in order
          to hold that agency action is unreasonably delayed.
20

21  750 F.2d at 80.

22          The court in Sze v. INS, No. C-97-0569-SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24,

23  1997), which applied the TRAC test to a similar complained-of delay in the immigration context,

24  found the fourth factor to be the most persuasive.  Id. at *8.  The court, in refusing to grant relief

25  under the APA, held that "the reasonableness of administrative delays must be judged in light of the

26  resources available to the agency."  Id.  The court also recognized that by granting relief, it "would,

27  at best, reorder the queue of applications, thereby leading to little net benefit."  Id.; see also Liberty

28  Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (Department of Labor's decision on

DEFENDANTS' MOTION
No. C 07-3768 SI                               7

1  how to handle competing applications for permanent labor certifications – on a first in, first out

2  processing – "is deserving of deference" because any grant of relief to petitioners would result in

3  "no net gain" – petitioners would move to the front of the queue, at the expense of other similarly

4  situated applicants.).

5        Here, granting Plaintiff's request for the court to compel the FBI to more expeditiously

6  resolve his name check comes at the expense of other similarly-situated applicants.  Furthermore,

7  the court found that the agency, rather than the court was in a "unique–and authoritative–position

8  to view its projects as a whole, estimate the prospects for each, and allocate its resources in the

9  optimal way." Id. (quoting In re Barr Labs., Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)).

10       Congress has declined to set a time frame upon processing adjustment of status name checks,

11  the cause of the delay in the case at hand. Contra Intelligence Reform and Terrorism Prevention Act

12  of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel

13  security checks to be completed within a certain timeframe).  Requiring the FBI to divert resources

14  to complete Plaintiff's name check by an arbitrary deadline or before other immigration applicants'

15  would detract from the FBI's efforts to reduce waiting times for all applicants.  Moreover, it would

16  be unfair to applicants who have been waiting longer than Plaintiff.  Even in cases involving

17  statutory deadlines, which do not apply here, courts have declined to grant such relief. See, e.g., In

18  re Barr Labs., Inc., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d

19  1094, 1101 (D.C. Cir. 2003).

20       The other TRAC factors also disfavor granting the requested relief.  As explained above,

21  Congress has imposed no deadline on the name check process. The nature and extent of the interests

22  at stake here also weigh heavily in favor of denying the request for a premature decision on this

23  application.  Plaintiff's interest in an expedited decision is minimal and does not implicate human

24  health and welfare. Plaintiff remains free to work and travel within the United States. On the other

25  hand, the FBI has an important national security interest in ensuring a thorough and accurate result

26  for his background check.  Defendant USCIS cannot render a decision on Plaintiff's application in

27  the absence of a complete background investigation.

28  ///

1

## VI.  CONCLUSION

2          For the foregoing reasons, the Government respectfully asks the Court to dismiss Defendant

3    Keisler, and grant the remaining Defendants' motion for summary judgment as a matter of law.

4    Dated: October 18, 2007                          Respectfully submitted,

5                                                     SCOTT N. SCHOOLS
                                                      United States Attorney
6

7                                                     _____/S/_____
                                                      MELANIE L. PROCTOR
8                                                     Assistant United States Attorney
                                                      Attorneys for Defendants
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION
No. C 07-3768 SI                          9