Kip Evan Steinberg (SBN 096084)
LAW OFFICE OF KIP EVAN STEINBERG
Courthouse Square
1000 Fourth Street, Suite 600
San Rafael, CA 94901
Telephone: 415-453-2855
Facsimile: 415-456-1921
kip@steinberg-immigration-law.com

**Attorney for Plaintiff AZIN MORTAZAVI**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AZIN MORTAZAVI | ) |
| Plaintiff, | ) **No. C 07-3768 SI** |
| v. | ) |
| ROSEMARY MELVILLE, District Director | ) **PLAINTIFF'S OPPOSITION** |
| USCIS San Francisco District Office | ) **AND CROSS MOTION FOR** |
| EMILIO T. GONZALEZ, Director, USCIS | ) **SUMMARY JUDGMENT:** |
| MICHAEL CHERTOFF, Secretary | ) **MEMORANDUM OF POINTS** |
| Department of Homeland Security | ) **AND AUTHORITIES** |
| MICHAEL MUKASEY, Attorney General, | ) |
| Department of Justice | ) |
| Defendants | ) |

//
//
//
//
//
//
//

*Mortazavi v. Melville (No. C 07-3768 SI)*
Pl. Opp. and Cross Motion for S.J.

1

# TABLE OF CONTENTS

2

3  TABLE OF AUTHORITIES.............................................................................iii

4  INTRODUCTION.........................................................................................1

5  ARGUMENT................................................................................................1

6  I.  8 U.S.C. § 1252(a)(2)(B) (ii) Does Not Divest This Court Of Jurisdiction........1

7
   II. "A Failure To Act" Is Not "Committed to Agency Discretion by Law"..............5
8

9       A.    Time Frame.......................................................................................5

10      B.    National Security..............................................................................7

11
   III.  DEFENDANT MUKASEY SHOULD NOT BE DISMISSED...........................9
12

13  IV.  PLAINTIFF HAS A CLEAR RIGHT TO HAVE HER APPLICATION
    ADJUDICATED IN A TIMELY MANNER...........................................................11
14

15  V.  THE GOVERNMENT OWES PLAINTIFF A MANDATORY DUTY..................13

16      A.    FBI Name Check...........................................................................14

17

18  VI. THE DELAY IS UNREASONABLE AS A MATTER OF LAW.........................16

19

20  VII. NO OTHER ADEQUATE REMEDY IS AVAILABLE....................................21

21

22  VIII. CONCLUSION......................................................................................22

23

24  IX.   APPENDICES (1-8)

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3

## FEDERAL CASES

4   *Abbasfar v. Chertoff*, 2007 WL 2409538 (N.D. Cal.)...........................................3

5   *Agbemaple v. INS*, 1998 WL 292441 (N.D. Ill.)...........................................13,16

6   *Ahmed v. DHS*, 328 F.3d 383 (7th Cir. 2003)....................................................13

7   *Aboushaban v. Mueller,* 2006 WL 3041086 (N.D. Cal.)..................................5,12

8   *Aboushaban v. Mueller*, 475 F. Supp.2d 943 (N.D. Cal. 2007)..........................14

9   *Alkeykani v. D.H.S.*, 2007 WL 2800380 (D. Conn.)............................................2

10  *Am. Academy of Religion v. Chertoff*, 463 F. Supp.2d 400  (S.D.N.Y. 2006)......13

11  *Baker v. Still*, 2007 WL 1393750 (N.D. Cal.)..............................................5,6,16

12  *Barron v. Reich, 13 F. 3d 1370, 1374 (9th Cir. 1994)*..........................................12

13  *Bd Of Gov of the Fed Reserve Sys v. MCorp Fin Inc.*,502 U.S. 32 (1991)...... ......3

14  *Brower v. Evans*, 257 F. 3d 1058  (9th Cir. 2001)........................................17,18

15  *Cho v. Jarina*, 2007 WL 1484053 (E.D.La.).....................................................12

16  *Clayton v. Chertoff*, 2007 WL 2904049 (N.D. Cal.)...................................5,14,16

17  *Dmitriev v. Chertoff*, 2007 WL 1319533 (N.D. Cal.)............................................5

18  *Dong v. Chertoff*, 2007 WL 2601107 (N.D. Cal.)........................4,6,7,9,13,16,18

19  *Duan V. Zamberry*, 2007 WL 626116 (W.D. Pa.)............................................2,3

20  *Elkhatib v. Butler*, 2005 WL 5226742 (S.D. Fla.).............................................12

21  *Elmalky v. Upchurch*, 2007 WL 944330 (N.D.Tex.)........................................7,12

22  *Fu v. Gonzales*, 2007 WL 1742376 (N.D. Cal) ................................................2,3

23  *Gelfer v. Chertoff,* 2007 WL 902382 (N.D.Cal.)......................................4,5,15,12

24  *Haidari v. Frazier,* 2006 WL 3544922 (D. Minn) ...........................................1,12

25  *Han Cao v. Upchurch*, 496 F. Supp.2d 569 (E.D. Pa 2007).........................2,5,7

26  *Iddir v. INS*, 301 F.3d 492, 499  (7th Cir. 2002)...............................................12

27

28

1   *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421,449 (1987)...........................................4

2   *I.N.S. v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271 (2001)...............................4

3   *Kim v. Ashcroft*, 340 F. Supp.2d 384, 389 (S.D. N.Y. 2004)..............................13

4   *Konchitsky v. Chertoff,* 2007 WL 2070325 (N.D. Cal.)............................4,6,7,15

5   *Liang v. Attorney General of U.S.*, 2007 WL 3225441 (N.D. Cal.)............11,18,19

6   *Liu v. Chertoff*, 2007 WL 2023548 (E.D. Cal.)...................................................5

7   *Liu v.Chertoff*, 2007 WL 2119427 (N.D .Cal.).................................................14

8   *Liu v. Novak*, 2007 WL 2460425 (D.D.C.)..........................................................2

9   *Mazouchi v. Still*, 2007 WL 2070324 (N.D. Cal.)..............................................12

10  *Patel v. Reno*, 134 F. 3d 929, 931-932 (9th Cir. 1998)....................................12

11  *Paunescu v. INS*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999)....................13,14,15

12  *Peng v. Gonzales*, 2007 WL 2141270................................................................4

13  *Perez-Martin v. Ashcroft*, 394 F.3d 752, 757 (9th Cir. 2005)..............................4

14  *Prado v. Reno*, 198 F.3d. 286, 290 (1st Cir. 1999)..............................................3

15  *Quan v. Chertoff,* 2007 WL 1655601 (N.D. Cal.)........................................13,17

16  *Razaq v. Poulos*, 2007 WL 61884 (N.D. Cal.)....................................................6

17  *Saleh v. Hansen*, 2006 WL 2320232 (S.D. Ohio)..........................................6,12

18  *Salehian v. Novak*, 2006 WL 3041109 (D. Conn.).............................................12

19  *Santillan v. Gonzales*, 2005 WL 1592872 (July 1, 2005 N.D. Cal.)....................8

20  *Santillan v. Gonzales*, 388 F.Supp. 2d 1065 (N.D. Cal. Aug. 24, 2005).............8

21  *Singh v. Still*, 470 F.Supp 2d 1064 (N.D. Cal. 2007)....................4,8,9,14,16,21

22  *Soneji V. Department of Homeland Security*, 2007 WL 3101660 (N.D. Cal.).......17

23  *Song v. Klapakas*, 2007 WL 1101283 (E.D. Pa.)..............................................12

24  *Spencer Enterprises, Inc. v. U.S.A.*, 345 F.3d 683,689 (9th Cir. 2003)................2

25  *Sze v. INS*, 1997 WL 446236  (N.D. Cal.)........................................................17

26  *Tang v. Chertoff*, 2007 WL 2462187 (E.D. Ky.)..................................................3

27

*Tang v Chertoff*, 493 F. Supp.2d 148 (D. Mass 2007)........................................2

*Telecom Research and Action Ctr v. FCC*, 750 F.2d 70 (D.C. Cir.1984)............17

*Tjin-A-Tam v. U.S. Dept. Of Homeland Sec.*, 2007 WL 781339(S.D. Fla.)..........12

*Toor v. Still*, 2007 WL 2028407  (N.D. Cal.)..................................................9,13

*Wang Yi Chao v. Gonzales*, 2007 WL 3022548 (N.D. Cal.)........9,10,14,16,17,19

*Wu v. Chertoff*, 2007 WL 1223858 (N.D. Cal.)..............................................1,5

*Xiao v. Gonzalez*, 2007 WL 2688464 (N.D. Cal.)..............................................1

*Xin Liu v. Chertoff*, 2007 WL 2433337 (E.D. Cal.)* .......................4,5,9,15,18,19

*Yu v. Brown*, 36 F. Supp. 2d 922, (D.N.M 1999).....................3,12,13,15,16,21

*Yu v. Chertoff*, 2007 WL 1742850 (N.D. Cal.)................................................12

**FEDERAL STATUTES**

5 U.S.C. § 555(b).........................................................................................5,6

5 U.S.C. §706(1). ..........................................................................................5

8 U.S.C. §1103 (a)(1).....................................................................................10

8 U.S.C. §1105(b).........................................................................................10

8 U.S.C. 1151(b)(2)(A)(I)................................................................................12

8 U.S.C. §1182 (d)(5)(A)................................................................................20

8 U.S.C. § 1252(a)(2)(B) (ii)....................................................................1,2,3,4

8 U.S.C. § 1255(a).........................................................................................1

8 U.S.C. §1430 (a).......................................................................................21

8 U.S.C. §1447 (b).......................................................................................17

8 U.S.C. §1571 (b).........................................................................................6

28 U.S.C. §534(a)........................................................................................10

Pub.L. No. 101-515, 104 Stat. 2101, 2112 (1990)..........................................14

1

## FEDERAL REGULATIONS

2   8 C.F.R. § 103.2(b)(18)....................................................................7,13

3   8 C.F.R. §103.7............................................................................14

4   8 C.F.R. §245.2(a)(5)(I)..................................................................13

5   8 CFR 274a.12(c)(9).......................................................................20

6

7

## OTHER AUTHORITIES

8   72 FR 4888 (proposed February 1, 2007);  2007 WL 268514 (F.R.).......... 7,8,14

9   *Citizenship and Immigration Services Ombudsman Annual Report  2006*........8,10

10  *Congressional Quarterly* (September 3, 2007) 2007 WL 17564416 ...................8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This Court has previously rejected challenges to its jurisdiction in two similar cases involving USCIS delays in processing adjustment of status applications. *Wu v. Chertoff*, 2007 WL 1223858 (N.D. Cal.); *Xiao v. Gonzalez*, 2007 WL 2688464 (N.D. Cal.) Defendants' jurisdictional challenge in this case is the same one raised and rejected in *Wu* and *Xiao*, *supra*. In their Motion for Summary Judgment ("MSJ"), Defendants also raise an additional argument: They claim that the delay in this case is reasonable.

This brief will demonstrate that this Court has jurisdiction and show that the delay in this case of nearly two years is unreasonable as a matter of law.

**ARGUMENT**

**I. 8 U.S.C. § 1252(a)(2)(B) (ii) Does Not Divest This Court Of Jurisdiction**

The decision whether to grant or deny an application for adjustment of status is discretionary. 8 U.S.C. § 1255(a). However, plaintiffs are not requesting that this Court review a denial, nor are they seeking to compel Defendants to grant their application. Plaintiffs are only asking this Court to compel Defendants to make any decision. Because Plaintiffs have neither been denied nor granted relief, 8 U.S.C. § 1252(a)(2)(B) (ii) does not bar jurisdiction. *Haidari v. Frazier,* 2006 WL 3544922 (D. Minn) at *4.

Defendants argue that this Court lacks jurisdiction because "the process of adjudication is completely discretionary" and make the further claim that

1   "The pre-adjudication investigation and processing are also discretionary

2   beyond the language of the controlling statute ...as a matter of common sense."

3   Finally, according to Defendants, the regulations  "provide discretion to the

4   manner of the processing of applications beyond that expressed in 8 U.S.C.

5   §1252(a)(2)(B)." (MSJ at 6)   Although Defendants' brief refers only to 8 U.S.C.

6   §1252(a)(2)(B), it is assumed that Defendants are relying on 8 U.S.C. §

7   1252(a)(2)(B) (ii) for support.   That section states:

8       (B) Denials of discretionary relief

9       ...no court shall have jurisdiction to review - (ii) any other decision
        or action of the Attorney General or the Secretary of Homeland
10      Security, *the authority for which is specified* under this subchapter
        to be in the discretion of the Attorney General or the Secretary of
11      Homeland Security...(*emphasis  added*)

12   This argument has been rejected by many courts. See, e.g. *Fu v.*

13   *Gonzales*, 2007 WL 1742376 (N.D. Cal) at *4 and *5;  *Duan V. Zamberry*, 2007

14   WL 626116 (W.D. Pa.) at *2 and *3; *Liu v. Novak*, 2007 WL 2460425 (D.D.C.) at

15   *5-6;  *Han Cao v. Upchurch*, 496 F.Supp.2d 569,572-574 (E.D. Pa 2007);  *Tang*

16   *v Chertoff*, 493 F. Supp.2d 148,151-154 (D.Mass 2007); *Alkeykani v. D.H.S.*,

17   2007 WL 2800380 (D.Conn.) at *3.  These courts have found several reasons in

18   concluding that the statute does not deprive them of jurisdiction.

19       First,  8 U.S.C. § 1252(a)(2)(B) (ii) only strips courts of jurisdiction to

20   review discretionary action that is *specified* in the statute in question.  *Spencer*

21   *Enterprises, Inc. v. U.S.A.*, 345 F.3d 683,689 (9th Cir. 2003).  Both *Fu* and *Duan*

22   analyzed 8 U.S.C. 1255(a) and found that the language authorizing the exercise

23   of discretion refers only to the granting or denial of adjustment of status.  Since

24   this statute did not explicitly  provide discretionary authority for the action

25   urged by the government, i.e. the pre-adjudication investigation and manner or

26   pace of processing, it does not provide authority to divest the Court of

27

28   *Mortazavi v. Melville (No. C 07-3768 SI)*
     Pl. Opp. and Cross Motion for S.J.          2

1  jurisdiction.

2  Yu[1] reflects the principle that the discretion giving rise to the
   jurisdictional bar must be 'specified' by statute.  In other words,
3  'the language of the statute in question must provide the
   discretionary authority' before the bar can have any effect.'
4  (citations omitted)  *Fu* at *5

5  In both *Fu* and *Duan*, *supra*,  the courts concluded that 8 U.S.C. §

6  1252(a)(2)(B) (ii) does not apply because the pace of adjudication of applications

7  is not discretionary in the manner required by the jurisdiction stripping

8  language of the statute.

9  Second,  "This section... does not address delay.  The plain language of

10 the provision ... addresses  'decision or action' on immigration matters, not

11 inaction, which is the subject of the complaint."  *Abbasfar v. Chertoff*, 2007 WL

12 2409538 (N.D. Cal.) at *4.  "... the defendants' alleged failure to take timely

13 action on the plaintiffs' application is not itself a decision, let alone a

14 discretionary action, but rather unreasonable inaction, which is the proper

15 subject of mandamus relief."  *Tang v. Chertoff*, 2007 WL 2462187 (E.D. Ky.) *4.

16 Third, the applicable presumptions in resolving questions of statutory

17 presumption are all in favor of finding jurisdiction over plaintiffs' claim:

18 **1)** Congress' intent to limit federal jurisdiction must be "clear and convincing"

19 in order to preclude judicial review.  *Bd. Of Governors of the Fed. Reserve Sys.*

20 *v. MCorp Fin. Inc.*, 502 U.S. 32,44 (1991);  **2)** The jurisdiction stripping

21 provisions of the Illegal Reform and Immigrant Responsibility Act of 1996

22 (which includes 8 U.S.C. § 1252(a)(2)(B) (ii)) are to be read narrowly, *Prado v.*

23 *Reno*, 198 F.3d. 286, 290 (1st Cir. 1999); ("a narrow construction of a

24 jurisdiction-stripping provision is favored over a broad one, and a jurisdictional

25

26

27  [1] *Yu v. Brown*, 36 F. Supp. 2d 922, 933-34 (D.N.M 1999)

28  *Mortazavi v. Melville (No. C 07-3768 SI)*
   Pl. Opp. and Cross Motion for S.J.           3

bar is not to be expanded beyond its precise language." *Dong v. Chertoff*, 2007 WL 2601107 (N.D. Cal.) at *4; **3)** there is a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271 (2001); *Perez-Martin v. Ashcroft*, 394 F.3d 752, 757 (9th Cir. 2005) ; and **4)** Statutory ambiguities in immigration laws are resolved in favor of immigrants. *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421,449 (1987).

Fourth, as its title suggests, section 1252 (a)(2)(B) applies only to those *discretionary* decisions made by Defendants pursuant to section 1255. As the government has conceded in at least two similar actions, (See *Singh v. Still*, 470 F.Supp 2d 1064, 1067 (N.D. Cal. 2007) and *Gelfer v. Chertoff*, 2007 WL 902382 (N.D. Cal.) at *2) while its duty *to grant* adjustment of status is discretionary, its duty *to process* I-485 applications is *not discretionary*. Further, "...even assuming §1252(a)(2)(B)(ii) applies here, because the court has determined that defendants have a non-discretionary duty to process plaintiff's I-485 application, the court's lack of jurisdiction to review discretionary actions...would not be implicated." *Konchitsky v. Chertoff,* 2007 WL 2070325 (N.D. Cal.) at *3.  *See also*, *Peng v. Gonzales*, 2007 WL 2141270 at *7-9.

Finally, in *Xin Liu v. Chertoff*, 2007 WL 2433337 (E.D. Cal.*)* at *4 n.8, the Court found that the better rule permits judicial review of unreasonable delayed applications, because without mandamus relief, USCIS could withhold a decision indefinitely in contravention of its non-discretionary duty to process such applications.   The Court noted that there are too many important rights associated with permanent residence status (e.g., the right to travel freely, the requirement of five years of legal permanent resident status prior to seeking naturalization, and the ability to petition close family members), to allow the speed at which these applications are processed to go entirely unchecked.

**II. "A Failure To Act" Is Not "Committed to Agency Discretion by Law"**

Plaintiffs' right to a timely adjudication is present in 5 U.S.C. § 555(b) which requires that "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Aboushaban v. Mueller, 2006 WL 3041086 (N.D. Cal.) at* \*2. The Administrative Procedure Act requires agency actions such as "adjustment of status" occur with a "reasonable time." *See Dmitriev v. Chertoff*, 2007 WL 1319533 (N.D. Cal.)\*3;  *Gelfer v. Chertoff*, 2007 WL 902382 at \*2. (N.D. Cal.)

Defendants argue that "a failure to act" in this case is committed to agency discretion by law and therefore relief is unavailable under the Administrative Procedure Act.  (MSJ at 4) However, a failure to act cannot represent agency action that is committed to agency discretion by law, otherwise it would read 5 U.S.C. § 555(b) out of the APA and render it a nullity. See, *Wu v. Chertoff*, 2007 WL 1223858 (N.D. Cal.) at \*2; *Liu v. Chertoff*, 2007 2023548 (E.D. Cal.) at \*3; *Xin Liu v. Chertoff*, 2007 WL 2433337 (E.D. Cal.) at \*3;  *Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007).  In addition, "[t]his would eviscerate  §706(1) of the APA, which clearly gives the Court the power to 'compel agency action...unreasonable delayed.' " *Clayton v. Chertoff*, 2007 WL 2904049 (N.D. Cal.) at \*5.  Congress could not have intended such a result.

### A.    Time Frame

"Defendants have a statutorily prescribed duty to adjudicate Plaintiff's application within a reasonable time under 5 U.S.C. § 555(b), while giving wide berth to an agency's determination as to what time period is reasonable." *Baker*

*v. Still*, 2007 WL 1393750 (N.D. Cal.)" (internal citations omitted).  Defendants point out that the statute and regulations provide no time frame for when an application must be adjudicated.  (MSJ at 3).  However, "The fact that neither the statute nor the regulations establish a specific deadline does not change the character of the duty itself...A 'duty to decide' becomes no duty at all if it is accompanied by unchecked power to decide when to decide" *Razaq v. Poulos*, 2007 WL 61884 (N.D. Cal.) at*3

Moreover, the statute and the regulations do provide a standard to measure reasonableness in processing applications and conducting investigations:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application... 8 U.S.C. §1571 (b)[2]

While the particular facts and circumstances of each case will dictate the reasonableness of a delay,  Congress has provided an initial starting point for the discussion of "reasonableness" in 8 U.S.C. § 1571(b). [3] See *Konchitsky v.*

---

[2] Plaintiffs do not argue that this 180 day time period is mandatory, but rather an indication of Congressional intent as to what may be considered a "reasonable" time under 5 U.S.C. § 555(b).

[3]As of November 14, 2007, the processing time for I-485 applications in the USCIS San Francisco Field Office is "six months".  *See Appendix One* and https://egov.immigration.gov/crs/jsps/index.jsp.  Plaintiff's I-485 application was filed January 9, 2006, substantially beyond this time period.  For this reason, Defendants' argument that granting relief to Plaintiff would "come at the expense of other similarly situated applicants" makes no sense.  (MSJ at 8)  *See Saleh v. Hansen*, 2006 WL 2320232 (S.D. Ohio) at *4.  Plaintiff has more than waited her turn in line.  Plaintiff has patiently waited her turn while untold numbers of later filed applications have been processed ahead of hers.  Characterizing the processing of her case at this late date as moving plaintiff "to the front of the queue at the expense of other similarly situated applicants" turns logic on its head.  *See Dong v. Chertoff*, 2007 WL 2601107 (ND Cal)at *12

*Chertoff,* 2007 WL 2070325 (N.D. Cal.) at *4.  Additional support for this 180 day time period as a gauge of reasonableness can be found in President Bush's call for an average processing time "standard" of six months to eliminate the backlog of immigration cases.[4]

For cases requiring an investigation relating to eligibility or the exercise of discretion, 8 C.F.R. § 103.2(b)(18) sets forth a regulatory standard of one year for the investigation to be completed in most cases.  In exceptional circumstances, additional delays may be authorized in six month increments if required.   In this case, however, there is no evidence indicating that Defendants have acted pursuant to that regulation in withholding adjudication on Plaintiff's application.  Nor is there any evidence that they complied with the detailed procedural requirements set forth in the regulation. *See Elmalky v. Upchurch,* 2007 WL 944330 (N.D.Tex.)*4.  Plaintiff submits that the fact that a specific procedure has been created to allow for the withholding of adjudication of certain applications strongly suggests that officials are generally without discretion to withhold adjudication of applications under normal circumstances.  *See Dong v. Chertoff,* 2007 WL 2601107 (N.D.Cal.) at *6-8; *Han Cao v. Upchurch*, 496 F. Supp.2d 569,576-577 (E.D. Pa 2007).

### B.    National Security

Defendants refer to the "important national security interest in ensuring a thorough and accurate result in his (sic) background check".  (MSJ at 8)

---

[4] "2. *Presidential Mandate To Eliminate the Backlog* - In FY 2002, the President called for an average processing time standard of six months for the adjudication of most immigration benefit applications and petitions to eliminate the backlog of pending applications and petitions at USCIS within five years (end of FY 2006)."  72 FR 4888, 4892 (February 1, 2007);  2007 WL 268514

*Mortazavi v. Melville (No. C 07-3768 SI)*
Pl. Opp. and Cross Motion for S.J.                    7

1    Ironically, it is the continued delay in these cases that potentially poses

2  the greatest risk to national security.  Public safety and the government's

3  mission on homeland security would be enhanced if it didn't take the FBI two

4  years to process a name check:

5           Considering the cost and inconvenience caused by the delays, the
           value of the FBI name check process should be reexamined.  In
6           almost every name check case that the FBI conducts for USCIS,
           the foreign national is physically present in the United States
7           during the name check process.  Thus, delays in the name check
           process actually prolong an individual's presence (albeit in an
8           interim status) in the United States while the check is pending.  *In
           that sense, the current USCIS name check policy may increase the
9           risk to national security by prolonging the time a potential criminal or
           terrorist remains in the country. See Appendix Two(emp. supplied*)[5]

10  *Citizenship and Immigration Services Ombudsman Annual Report  2006* p. 25

11    Several judges in this district have rejected the talisman of "national

12  security" as a blanket justification for bureaucratic delay.  When Judge Patel

13  faced a similar claim, she presciently questioned "whether the totemic use of

14  the term 'national security' will provide shelter for various permutations of

15  bureaucratic errors, administrative backlogs, inter-agency communication

16  lapses, or rootless security justifications."  *Santillan v. Gonzales*, 2005 WL

17  1592872 (July 1, 2005 N.D. Cal.)*9.  *See also*, *Santillan v. Gonzales*, 388

18  F.Supp. 2d 1065, 1078-1079, (N.D. Cal. Aug. 24, 2005).  <u>See also</u> *Singh v.

19  Still*, 470 F. Supp.2d 1064, 1069 (N.D. Cal. 2007) ("the mere invocation of

20

21           [5] On September 3, 2007 *Congressional Quarterly,* 2007 WL 17564416
22  reported that a recent Department of Homeland Security assessment
   determined that delays in FBI background checks present a national security
23  risk.  *See Appendix Three*. Similarly, in its proposed rules to raise filing fees
   published on February 1, 2007 in the *Federal Register*, USCIS stated it "places
24  an emphasis on timely background checks to ensure that the United States is
25  not placed at risk by failing to identify individuals who may be national
   security or public safety risks at the earliest possible time in the adjudications
26  process."  72 FR 4888, 4892; 2007 WL 268514 (F.R.)

27

28  *Mortazavi v. Melville (No. C 07-3768 SI)*
   Pl. Opp. and Cross Motion for S.J.           8

national security is not enough to render agency delay reasonable per se); and *Toor v. Still*, 2007 WL 2028407  (N.D. Cal.) *2. (" considering the fact that most applicants will be physically present in the United States, [permission for inaction] seems antithetical to national security interests." *Dong v. Chertoff*, 2007 WL 2601107 (N.D. Cal.) at *10 (same); *Wang Yi Chao v. Gonzales*, 2007 WL 3022548 (N.D. Cal.) at *5 (same);  *Xin Liu v. Chertoff*, 2007 WL 2433337 (E.D. Cal.*)* at *6 (same).  In addition, on July 24, 2007, Plaintiff made a F.O.I.A. and Privacy Act request to the FBI seeking records relating her.  She also sent a request for an FBI identification record on September 21, 2007.  In both cases, she was told that no record relating to her exists.*(See Appendix 4 and Appendix 5)*

### III.  DEFENDANT MUKASEY SHOULD NOT BE DISMISSED

Defendants argue that Defendant Attorney General Michael Mukasey should be dismissed.[6]  Defendants cite several cases in this district that agree with Defendants' position.   However, in none of the cited cases was an argument advanced as to why either the Attorney General or the Director of the FBI were proper defendants.[7]  Plaintiff believes that the Attorney General is a proper defendant in this case for the following reasons:

Plaintiff agrees with Defendants that since March 1, 2003, the

---

[6]Michael Mukasey has replaced Peter Keisler as Attorney General.

[7]See, e.g., *Wang Yi Chao v. Gonzales*, 2007 WL 3022548 (N.D. Cal.) at *3 ("Plaintiff has not identified any statute or regulation establishing a nondiscretionary duty on the part of the FBI to process name checks for adjustment of status applications. .. Accordingly, this Court has no jurisdiction to compel the FBI to complete the background check and the claims against Defendant Mueller are dismissed.")

Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act.[8]  However, that does not resolve the issue.  The Attorney General is a proper defendant because he is the superior of the Director of the FBI in the Department of Justice and both offices have a legal duty to provide a name check, if requested by USCIS.  It is important to note that USCIS is not statutorily required to obtain an FBI name check to adjudicate an application for adjustment of status.  Nor is completion of the name check a legal requirement for adjustment of status.  *Wang Yi Chao v. Gonzales*, 2007 WL 3022548 (N.D. Cal.) at *3.   USCIS elects to obtain name checks at its sole discretion.  ("...the name checks are a fee-for-service that the FBI provides to USCIS at its request." *CIS Ombudsman Annual Report 2006* at p. 24. (*Appendix Two*) USCIS requires FBI name checks as a matter of its own policy[9] rather than as a result of a legal mandate from Congress, however, <u>once requested</u> the Attorney General has a duty to provide this information within a reasonable period of time under the Administrative Procedure Act.  <u>The source of this legal duty is found in the following two statutes:   8 U.S.C. §1105(b) and 28 U.S.C. §534(a).</u>

**8 U.S.C. §1105(b)**

> The Attorney General and the Director of the Federal Bureau of Investigation *shall provide* the Department of State and the Service access to the criminal history record information contained in the National Crime Information Center's Interstate Identification Index (NCIC-III_, Wanted Persons File, *and to any other files* maintained by the National Crime Information Center that may be mutually agreed upon by the Attorney General and the agency receiving the

---

[8]The Attorney General still gets to decide all questions of law with respect to the Immigration & Nationality Act.  8 U.S.C. §1103 (a)(1).

[9]See Decl. of Ronald Nelson attached to Def.'s MSJ as "Exhibit A" at ¶3.

1

2

access, for the purpose of determining whether or not a visa
applicant or applicant for admission has a criminal history record
indexed in any such file. (*emphasis added*).

3

**28 U.S.C. §534(a)**

4

5

6

7

8

The Attorney General *shall* -
(1) acquire, collect, classify, and preserve identification, criminal identification,
crime, and other records;
(4) exchange such records and information with, and for the official use of,
authorized officials of the Federal Government, the States, cities, and penal
and other institutions.  (*emphasis added*)

9

10

11

12

13

14

These statutes require the Attorney General to provide  access to

criminal history records and exchange information and other records with the

Department of Homeland Security.  This creates a non-discretionary legal duty.

For this reason, the Attorney General is  a proper defendant in this case and

this Court has the authority to directly order the Attorney General to complete

the name check in a reasonable period of time.[10]

15

16

17

**IV.  PLAINTIFF HAS A CLEAR RIGHT TO HAVE HER
APPLICATION ADJUDICATED IN A TIMELY MANNER**

18

19

20

A mandamus Plaintiff must demonstrate that: (1) he or she has a clear

right to the relief requested; (2) the defendant has a clear duty to perform the

act in question; and (3) no other remedy is available. *Barron v. Reich, 13 F. 3d*

21

22

23

24

25

26

[10]In the event that this Court finds that the Attorney General is not a
proper defendant, Plaintiff respectfully asks this Court to consider adopting
Judge Wilkens' formulation with respect to the delay caused by the FBI name
checks:  "...the Court has already concluded that Director Mueller is not a
proper party to this action, and any potential order would bind only the DHS
and USCIS Defendants.  It would be up to these Defendants to determine how
best to comply with an order compelling them to fulfill their obligations under
the INA." *Liang v. Attorney General of U.S.*, 2007 WL 3225441 (N.D. Cal.) at *4

27

28

*Mortazavi v. Melville (No. C 07-3768 SI)*
Pl. Opp. and Cross Motion for S.J.          11

1  *1370, 1374 (9th Cir. 1994);  Iddir v. INS*, 301 F.3d 492, 499  (7thCir. 2002).

2  The court may compel the government to take action, but the court cannot

3  compel the agency to exercise its discretion in a particular manner, nor can it

4  grant the relief the Plaintiff seeks from the agency.  *Patel v. Reno*, 134 F. 3d

5  929, 931-932 (9th Cir. 1998).

6        To determine if a plaintiff has a right to the adjudication of an

7  application, the courts look to the statute in question to determine what

8  Congress directed.  *Iddir*, supra at 499.   Plaintiff is the beneficiary of an

9  approved I-130 visa petition approved pursuant to 8 U.S.C. §1151(b)(2)(A)(I).

10  She has applied for adjustment of status to lawful permanent residence under

11  8 USC §1255(a).    Thus Plaintiff is the intended beneficiary of this statute and

12  falls within its zone of interests.   See *Yu v. Brown*, 36 F. Supp.2d 922, at 930

13  (D.N.M. 1999).

14        Numerous courts have found that the Immigration & Nationality Act

15  establishes a clear right to relief for adjustment of status applicants.  See, e.g.

16  *Wu v. Chertoff*, 2007 WL 1223858 (N.D. Cal.) at*3*;  Aboushaban v. Mueller*,

17  2006 WL 3041086 (N.D. Cal.) at*2*;  Mazouchi v. Still*, 2007 WL 2070324 (N.D.

18  Cal.); *Salehian v. Novak*, 2006 WL 3041109 (D. Conn.)*;  Haidari v. Frazier*, 2006

19  WL 3544922 (D. Minn.) at *4;  *Tjin-A-Tam v. U.S. Dept. Of Homeland Sec.*, 2007

20  WL 781339(S.D. Fla.) at *3;  *Elmalky v. Upchurch, 2007 WL 944330 (N.D. Tex.)

21  at *3;  Song v. Klapakas*, 2007 WL 1101283 (E.D. Pa.) at *3 ("the majority of

22  federal courts who have considered similar claims have found mandamus relief

23  appropriate."); *Cho v. Jarina*, 2007 WL 1484053 (E.D.La.) at *3; *Yu v. Chertoff*,

24  2007 WL 1742850 (N.D. Cal.) at *3;   *Saleh v. Hansen*, 2006 WL 2320232 (S.D.

25  Ohio) at *3; *Elkhatib v. Butler*, 2005 WL 5226742 (S.D. Fla.) *at *2; Iddir*, 301

26  F.3d at 500 (affirmed in *Ahmed v. DHS*, 328 F.3d 383 (7th Cir. 2003); *Paunescu*

27

28

1    *v. INS*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999); *Yu, supra, at* 932 ;  *Agbemaple*

2    *v. INS*, 1998 WL 292441 (N.D. Ill.) at \*2;  *Kim v. Ashcroft*, 340 F. Supp.2d 384,

3    389 (S.D. N.Y. 2004)*;  See also*, *Am. Academy of Religion v. Chertoff*, 463 F.

4    Supp.2d 400 at 419-423  (S.D.N.Y. 2006).

5

6    ### V.  THE GOVERNMENT OWES PLAINTIFF A MANDATORY DUTY

7    Plaintiff is asking this Court to order USCIS to perform its legal duty

8    to adjudicate her pending applications for adjustment of status without

9    unreasonable delay. Plaintiff maintains that the right to adjudication is derived

10   from the government's mandatory duty to process the I-485 application and the

11   fact that Plaintiff is the beneficiary of Defendants' own regulations.  See 8

12   C.F.R. §245.2(a)(5)(I) ("The applicant *shall* be notified of the decision of the

13   director and, if the application is denied, the reasons for the denial")*(emphasis*

14   *added);* [11]

15   "Insofar as the APA authorizes the courts to compel an agency to

16   complete a non-discretionary duty within a reasonable time, plaintiff's claim is

17   on solid ground." *See Toor v. Still*, 2007 WL 2028407  (N.D. Cal.) \*2.  "It

18   appears that all of the courts in this district which have been presented with

19   this question, and the majority of other courts presented with it, have found

20   that CIS...has a nondiscretionary duty to adjudicate immigration applications

21   within a reasonable time." *Quan v. Chertoff,* 2007 WL 1655601 (N.D. Cal.)\*2).

22   ("To hold otherwise would be to sanction the perpetual delay of governmental

23

---

24   [11]Judge Armstrong has also found a legal duty in 8 C.F.R. § 103.2(b)(18)
25   entitled "Withholding adjudication".  This regulation imposes a specific
     framework for both the timing and manner of withholding adjudication of
26   adjustment of status.  *See Dong v. Chertoff*, 2007 WL 2601107 (N.D.Cal)\*6-8.

27

28   *Mortazavi v. Melville (No. C 07-3768 SI)*
     Pl. Opp. and Cross Motion for S.J.          13

1    obligations that are clearly mandated by law.") *Liu v.Chertoff*, 2007 WL

2    2119427 (N.D. Cal.) at *1.

3

4                          **A.    FBI Name Check**

5        USCIS claims that it is unable to adjudicate Plaintiff's I-485 application

6    because it has not yet received the name check results from the FBI.  (MSJ at

7    2).  However, the FBI's delays are attributable to USCIS.   See *Aboushaban v.*

8    *Mueller*, 475 F. Supp.2d 943, 948, FN 7 (N.D. Cal. 2007) ;  *Singh v. Still*, 470 F.

9    Supp.2d 1064, 1068 (N.D. Cal. 2007).

10       USCIS cannot escape its legal duty to adjudicate an I-485 application in

11   a reasonable amount of time by contracting with the FBI to perform a name

12   check and then claim it is powerless to act.[12] See, *Wang Yi Chao v. Gonzales*,

13   2007 WL 3022548 (N.D. Cal.) at *3.   This is especially true since USCIS has

14   the power to request the FBI to expedite a name check in cases of undue delay,

15   but chooses not to do so.  Compare the USCIS expedite policy prior to

16   December 21, 2006 (*Appendix Six*) and after December 21, 2006 (*Appendix*

17   *Seven*).  *See also* Nelson Dec. at ¶16; *Clayton v. Chertoff*, 2007 WL 2904049

18   (N.D. Cal.) at *6.  Furthermore, a government agency cannot shift the blame to

19   another government agency because the government and all entities involved

20   are arms of the government.  *Paunescu v. I.N.S.*, 76 F. Supp.2d 896,903 n.2.

21   _____

22       [12]Congress has directed that the FBI "may establish and collect fees to
     process fingerprint identification records and name checks for non-criminal
23   justice, non-law enforcement employment and licensing purposes," such as for
     immigration matters.  Pub.L. No. 101-515, 104 Stat. 2101, 2112 (1990).  The
24   Congressional scheme then provides that aliens must submit application fees
     to USCIS, 8 C.F.R. §103.7, a portion of which USCIS pays over to the FBI for
25   fingerprint and name checks for that applicant.  See 72 Fed. Reg. 4888 at 4893
     and 4899 (proposed Feb.1, 2007).
26

27
     *Mortazavi v. Melville (No. C 07-3768 SI)*
28   Pl. Opp. and Cross Motion for S.J.          14

1   (N.D. Ill. 1999);   <u>See also</u>, *Konchitsky v. Chertoff,* 2007 WL 2070325 (N.D. Cal.)

2   at *5-6.

3       Defendants have submitted the Declaration of Ronald Nelson and a "Fact

4   Sheet" for the Court's consideration.  (See "Exhibit A" and "Exhibit 1" attached

5   to Def.'s MSJ.)   Plaintiff submits that these Exhibits do not address any

6   specific facts that would make the delay reasonable.  Although the Nelson

7   declaration provides general information about the name check process, it

8   contains virtually no information about the specific steps the government has

9   taken which justify an approximate two year delay in Plaintiff's case.   "Simply

10  asserting that the USCIS is awaiting the results of an FBI name check does not

11  explain why petitioner's application has been stagnant for the past two

12  years...Respondents do not point to a single action taken during that period of

13  time to further processing of petitioner's application or a reason why

14  petitioner's application is particularly troublesome." *Gelfer v. Chertoff*, 2007

15  WL 902382 at *2. (N.D. Cal.)    Furthermore, in this case, Defendants cannot

16  avail themselves of the argument that the delay in processing plaintiffs' I-485

17  applications has not been unreasonable because of the "time consuming

18  nature of reviewing documents when common names like Liu are involved."

19  *Xin Liu v. Chertoff*, 2007 WL 2433337 (E.D. Cal) at *4.  Unlike "Liu", the name

20  "Mortazavi" is not common.

21      Plaintiff is aware that Defendants are free to deny her application for

22  adjustment of status, however, after paying substantial filing fees, Defendants

23  owe Plaintiff the duty to process her application.  Though Defendants can deny

24  Plaintiff's application in the exercise of discretion, the duty to adjudicate the

25  application is not discretionary. *Yu*, 36 F. Supp 2d at 931.  There is a

26  difference between Defendants' discretion over *how* to resolve an application for

27

28

*Mortazavi v. Melville (No. C 07-3768 SI)*
Pl. Opp. and Cross Motion for S.J.                15

benefits under the Immigration & Nationality Act and Defendants' discretion over *whether* it resolves an application.  *Singh v. Still*, 470 F. Supp.2d 1064, 1067 (N.D. Cal. 2007).

If Plaintiff truly poses a security threat, it behooves Defendants to act on her application promptly so that her threat is quickly identified.  Administrative agencies do not possess discretion to avoid discharging the duties that Congress intended them to perform. *Yu, supra* at 931; *Agbemaple, supra*, at *2.

## VI. THE DELAY IS UNREASONABLE AS A MATTER OF LAW

Plaintiff filed her I-485 application for adjustment of status close to two years ago on January 9, 2006.

" What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, 2007 WL 902382 at *2. (N.D. Cal.) In determining whether there has been unreasonable delay in processing an application for adjustment of status, courts typically look "to the source of the delay - e.g. the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Singh v. Still*, 470 F. Supp.2d 1064, 1068 (N.D. Cal. 2007).  "Courts in this district have found that, under normal circumstances, a delay of approximately two years due to an uncompleted FBI background check is unreasonable as a matter of law." *Clayton v. Chertoff*, 2007 WL 2904049 (N.D. Cal.) at *6; "This Court agrees with the holdings of other courts within the district that a delay of two years is presumptively unreasonable as a matter of law." *Wang Yi Chao v. Gonzales*, 2007 WL 3022548 (N.D. Cal.) at *6 ;   See also, *Dong v. Chertoff*, 2007 WL 2601107 (N.D.Cal.) at *12 ("waiting close to two years"); *Baker v. Still*, 2007 WL 1393750 (N.D. Cal.) at *2 ("nearly two year

1    delay').

2    Defendants rely on *Sze v. INS*, 1997 WL 446236  (N.D. Cal.)  to justify the

3    delay in this case.  *Sze* is inapposite because the plaintiffs in these two cases

4    are not similarly situated.  *Sze*  involved administrative delays in a

5    naturalization application not an application for adjustment of status and

6    analysis of a statute, 8 U.S.C.§ 1447(b), which is not applicable to Plaintiff's

7    case.[13]  In the context of a naturalization application, Judge Conti found that

8    neither mandamus nor the APA provided relief citing the government's

9    significant "concern about proper granting of citizenship and the rights it

10    affords." *Sze* at *7.   Defendants do not cite Judge Conti's recent decisions in

11    which he denied the government's motion to dismiss in two mandamus actions

12    in the context of  adjustment of status applications  delayed by long pending

13    FBI name checks.  See *Soneji V. Department of Homeland Security*, 2007 WL

14    3101660 (N.D. Cal.) at *4 ("this scenario seems to be the epitome of an

15    unreasonable delay"); and *Quan v. Chertoff*, 2007 WL 1655601 (N.D. Cal.) at

16    *4-*5. ("It appears possible that Plaintiff could prove a set of facts that would

17    lead this Court to conclude that the delay in adjudication of her Adjustment

18    Application was unreasonable.")[14]

19    In analyzing the reasonableness of agency delay, the Ninth Circuit has

20    adopted the six factors articulated in *Telecommunications Research and Action*

21    *Center v. FCC*, 750 F.2d 70,80 (D.C. Cir.1984) ("*TRAC* "; *Brower v. Evans*, 257

22

23        [13]Of the eight plaintiffs in the *Sze* case, seven experienced delays of less

24    than one year.  The one plaintiff whose delay was longer was due to a possible
       criminal investigation.  *Sze v. INS*, 1997 WL 446236  (N.D. Cal.) at *2-3.

25

26        [14]*Sze* has also been distinguished for other reasons.  See *Wang Yi Chao,*
       *supra,* at *4.

27

28    *Mortazavi v. Melville (No. C 07-3768 SI)*
       Pl. Opp. and Cross Motion for S.J.                17

F. 3d 1058, 1068 (9th Cir. 2001):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

In applying the *TRAC* factors to Plaintiff's case, Plaintiff submits that the delay in her case is unreasonable for the following reasons:

1. Limited resources or not, a common-sense rule of reason dictates that if the FBI was performing background checks with due diligence, it would not take two years to process Ms. Mortazavi's name check.  "[A] lack of sufficient resources devoted to name check operations is a matter for the agencies to take up between themselves or with Congress.  The executive branch must decide for itself how best to meet its statutory duties; this Court can only decide whether or not those duties have been met."  *Liang, supra, at* \*6; <u>See also,</u> *Dong, supra,* at \*11; *Xin Liu v. Chertoff* 2007 WL 2433337 (E.D. Cal.*)* at \*6 fn 11

2. Plaintiff's application has been pending for four times the length of the 180 day period identified by Congress and President Bush.  See Plaintiff's MSJ, *supra*, at pp 7-8.  See also, *Liang*, supra, at *7; *Wang Yi Chao, supra,* at *4.

3.  Defendants have provided no particularized facts to suggest that national security concerns apply with special force to Ms. Mortazavi's application or that her name check is particularly complex or otherwise subject to special circumstances.  Nor have they pointed to any specific evidence suggesting that the delay is attributable to Plaintiff.   See, *Xin Liu*, *supra,*  at *6.

4.  "USCIS is not without the power to speed up the adjudication of Plaintiff's application.  Indeed, the agency maintains a policy whereby it may request that the FBI expedite a particular name check if certain criteria are met.  This suggests that promptly completing the adjudication of Plaintiff's application would neither adversely affect national security nor be quite the difficult task Defendants portray it to be."  *Liang*, supra, at *7.

5.  Defendants argue that expediting Plaintiff's application will come at the expense of other similarly situated applicants.  However, Defendants' failure to fulfill their statutory duty to other applicants has no bearing on whether they have fulfilled their statutory duty to Plaintiff, and thus cannot serve as a basis for denying Plaintiff's motion.  *Liang*, supra, at *7.

6.  Agency decisions that bear on an individual's immigration status are matters affecting human welfare, and thus delays are less tolerable than with other types of decisions.  Plaintiff and her U.S. citizen husband have lived for

almost two years with uncertainty over Plaintiff's right to remain in the United

States.   Defendants attempt to portray the impact of their delay on Plaintiff as

"minimal" (MSJ at 8) by stating that Plaintiff has already been granted the right

to work here and travel within the United States (MSJ at 8).   But Defendants

do not take into account the instability that accompanies Plaintiff's not

knowing whether she will be allowed to remain in the United States in the long

run.   While she is waiting for Defendants' decision, she cannot make long-term

plans because she might face the possibility that she will ultimately be forced

to return to her country of origin.   Defendants owe Plaintiff the right to know

after a reasonable amount of time whether she is entitled to begin building a

life for herself together with her husband in this country.   Two years is no petty

amount of time to spend waiting.   *Liang*, supra, at *7.  See also Plaintiff's

declaration attached as *Appendix 8.*

7.   As an applicant for adjustment of status, Plaintiff's ability to work and

travel abroad is circumscribed by government regulation.   She  is

required to apply each year for employment authorization (Form I-765)

under 8 CFR 274a.12(c)(9) and "advance parole" (Form I-131), which is a

permit to travel abroad and return to this country while her application

is pending  under 8 U.S.C. §1182 (d)(5)(A) .  Her current employment

authorization expires on April 15, 2008.   Her current advance parole

expires on April 15, 2008.   The fees for these yearly applications are

costly and recently increased to $340 (I-765) and $305 (I-131) as of July

30, 2007.   (See *Exhibit J* attached to Complaint)  As a lawful permanent

resident, Plaintiff would have the ability to work and travel without these

restrictions.

8.    Plaintiff wishes to become a U.S. citizen as soon as possible and enjoy all the rights and privileges attendant thereto, including the right to vote, the right to jury service, and the freedom to travel abroad and return to the United States with a U.S. passport without fear of exclusion.    To be eligible for naturalization, Plaintiff must have resided in the United States for three years as a lawful permanent resident.  8 U.S.C. §1430 (a).    Plaintiff's ability to apply for naturalization has been delayed since her application for permanent residence has not been adjudicated.  Plaintiff also wishes to petition for her elderly parents in Iran to join her in the United States.  In order to do this, she must first become a United States citizen.  *Singh v. Still*, 470 F.Supp 2d 1064, 1067, 1070 (N.D. Cal. 2007); <u>See</u> Plaintiff's declaration attached as *Appendix 8*.

Taking into account all these considerations, Plaintiff respectfully submits that Defendants' nearly two year delay in her case is unreasonable as a matter of law.

## VII.  NO OTHER ADEQUATE REMEDY IS AVAILABLE

The courts will not grant mandamus relief if the Plaintiff has an alternative, fully adequate remedy available.  This means that Plaintiff must exhaust her administrative remedies.   Over the last two years, Plaintiff and her attorney have made numerous inquiries about her application.  See Attachment "A" to Complaint, pages 1-6.  Despite these numerous inquiries to the agency, Plaintiff's application remains pending.  Waiting for the agency to act indefinitely is not an adequate remedy.   Plaintiff has no alternative remedy other than recourse to this Court for relief.  See, *Yu, supra*, at 932.

//

//

*Mortazavi v. Melville (No. C 07-3768 SI)*
Pl. Opp. and Cross Motion for S.J.               21

# VIII.  CONCLUSION

This Court has subject matter jurisdiction.  Plaintiff has a clear right to the relief requested.  Defendants have a clear duty to adjudicate Plaintiff's application for adjustment of status.  No other adequate remedy is available. The delay in this case is unreasonable as a matter of law.   Plaintiff respectfully requests this Court to grant her Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.


Dated:   November 30, 2007                     Respectfully submitted,


                                               _____/s/_____

                                               Kip Evan Steinberg
                                               Attorney for Plaintiff MORTAZAVI