# APPENDIX ONE

1





Home   Contact Us   Site Map   FAQ

Search

Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

Print This Page          Back

# U.S. Citizenship and Immigration Services
## San Francisco CA Processing Dates
## Posted November 14, 2007

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 16-18 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I… know what kind of services are available to me after I file my application or petition?

District Office Processing Dates for **San Francisco CA** Posted November 14, 2007

| Form | Form Name | Processing Timeframe: |
|------|-----------|-----------------------|
| I-131 | Application for Travel Documents | 3 Months |
| I-485 | Application to Register Permanent Residence or Adjust Status | 6 Months |
| I-600 | Petition to Classify Orphan as an Immediate Relative | June 07, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | June 07, 2007 |
| I-765 | Application for Employment Authorization | 11 Weeks |
| N-400 | Application for Naturalization | 7 Months |
| N-600 | Application for Certification of Citizenship | July 06, 2007 |



Print This Page          Back

**11-28-2007 03:12 PM EST**



# APPENDIX TWO

③



Citizenship and Immigration Services Ombudsman

# Annual Report 2006

**Submitted to:**

**United States Senate**
**Committee on the Judiciary**

**United States House of Representatives**
**Committee on the Judiciary**

**June 29, 2006**



Homeland
Security



Figure 7: USCIS Fee Revenue for FY 05



Note: The I-765 Employment Authorization revenue attributed to green card applicants reflects the Ombudsman's estimate of EADs issued to those applicants. The data used to generate Figures 6 and 7 do not directly match data used to generate Figure 5. To maintain consistency with the Ombudsman's 2005 Annual Report at p. 8, Figure 7 was generated using the same formulas as in last year's revenue chart. Better reporting of certain data led to a refinement in the calculations, which were used to generate Figure 5 above, as explained in Appendix 3. The percentage difference in the calculated values is minimal.

USCIS' response to the 2005 Annual Report stated that the agency is "taking steps to ensure that interim documents are not provided to applicants who have not cleared basic security checks or who have not provided the essential evidence of eligibility for permanent residence."[41] While this may appear to deal with the issue, it is only a short-term approach. EADs are not the problem. Rather, they are symptoms of inefficient green card application processes that, if corrected, automatically would reduce the need for USCIS to issue EADs except for the exceptional circumstance. Moreover, reducing the number of applications for interim benefits allows USCIS to allocate staff to tackle backlog elimination and prevention efforts.

## F.    Name Checks and Other Security Checks

FBI name checks, one of the security screening tools used by USCIS, significantly delay adjudication of immigration benefits for many customers, hinder backlog reductions efforts, and may not achieve their intended national security objectives.[42]

---

[41] USCIS' Response to the Ombudsman's 2005 Annual Report (Mar. 15, 2006) at 12.

[42] The Ombudsman's 2005 Annual Report (at p. 11) included a discussion of the pervasive and serious issue of background and security checks.



Currently, USCIS conducts several security checks to: (1) determine whether applicants have a history of criminal or terrorist activity that would make them ineligible for a benefit; and (2) notify law enforcement agencies of the presence and intentions of individuals who might be of interest. The Ombudsman receives numerous inquiries about FBI name check delays. During the reporting period, processing delays due to FBI name checks were an issue in 15.7 percent of all written case problems received. Stakeholder organizations and USCIS personnel across the country also regularly raise the issue of FBI name check delays as the most pervasive problem preventing completion of cases.

> **CASE PROBLEM**
>
> *The principal applicant and his wife (the derivative beneficiary) filed their employment-based green card applications in October 2001. At the time of inquiry with the Ombudsman in March 2006, their applications remained pending due to FBI name checks.*

> **CASE PROBLEM**
>
> *An applicant filed a naturalization application in March 1999 with a USCIS service center that had jurisdiction over the case. In August 2003, USCIS transferred the application to the applicant's local USCIS district office for the applicant to be interviewed. The interviewing officer requested additional evidence at the interview, which the applicant provided in a timely fashion. When the Ombudsman received the inquiry in April 2006, the application remained pending due to an outstanding FBI name check and additional security checks.*

The FBI provides information to USCIS as a paying customer on anyone who is the principal subject of an investigation or is a person referenced in a file. USCIS adjudicators and the Fraud Detection and National Security (FDNS) unit use this information to determine if applicants are ineligible for benefits. The name checks are <u>not</u> sought by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead, the name checks are a fee-for-service that the FBI provides to USCIS at its request. Moreover, the FBI does not record any additional information about the names USCIS submits and does not routinely take any further action. Instead, the FBI reviews its files much like a credit reporting entity would verify and report on information to commercial entities requesting credit validations.

Some types of background and security checks return results within a few days and do not significantly prolong USCIS processing times or hinder backlog reduction goals. However, while the overall percentage of long-pending cases is small, as of May 2006, USCIS reported 235,802 FBI name checks pending, with approximately 65 percent (153,166) of those cases pending more than 90 days and approximately 35 percent (82,824) pending more than one year.[43]

---

[43] *See* USCIS FBI Pending Name Check Aging Report (May 17, 2006).



In November 2005, based on earlier data, the DHS IG reported that FBI name checks take more than a month to complete for six percent of submissions and more than six months to complete for one percent of submissions.[44]  The longer time is required because the FBI must conduct a manual review of its files to verify that the applicant is actually the subject of an FBI file.  This review can include the FBI reporting on fragments of names on people who are not necessarily central or directly related to a case.

USCIS has limited capability to produce reports detailing the status of long-pending FBI name check cases.  In addition, USCIS systems do not automatically indicate when a delayed name check is complete and the case can be adjudicated.  Often, this leads to a situation where the validity of other checks expire before USCIS reviews the case.  Those checks then need to be reinitiated, adding financial and time costs for applicants and USCIS.  The high volume of FBI name check cases and the relatively limited resources devoted to background and security checks are major problems.  The FBI's manual processing exacerbates delays.  USCIS' planned Background Check Service (BCS), a new IT system that will track the status of background and security checks for pending cases, needs to be implemented as soon as possible.  The Ombudsman looks forward to more information from USCIS on the BCS implementation schedule.

Considering the cost and inconveniences caused by the delays, the value of the FBI name check process should be reexamined.  In almost every name check case that the FBI conducts for USCIS, the foreign national is physically present in the United States during the name check process.  Thus, delays in the name check process actually prolong an individual's presence (albeit in an interim status) in the United States while the check is pending.  In that sense, the current USCIS name check policy may increase the risk to national security by prolonging the time a potential criminal or terrorist remains in the country.  Further, checks do not differentiate whether the individual has been in the United States for many years or a few days, is from and/or has traveled frequently to a country designated as a State Sponsor of Terrorism, or is a member of the U.S. military.  Most individuals subject to lengthy name checks are either already green card holders or have been issued EADs allowing them to receive Social Security cards and state drivers' licenses.  Additionally, most green card applicants are also eligible to receive advance parole to enable them to travel outside the United States and return as long as their cases are pending, which can be for years under the current process.

USCIS requires that the FBI name check be completed before issuing a green card.  However, in removal proceedings before an Immigration Judge, the judge will require confirmation of all background and security checks by DHS before the judge can grant any relief (for example, ordering USCIS to issue a green card).  Immigration and Customs Enforcement (ICE – another DHS agency) attorneys indicate to the judge that all background and security checks have been initiated.  The judge proceeds with issuing an order which grants green card status to the individual.  Based on this order, USCIS, as the producer of the actual card, must issue the green card despite the outstanding FBI name check.  These two policies need to be harmonized.

---

[44] *See* DHS IG Report "A Review of U.S. Citizenship and Immigration Services' Alien Security Checks," OIG-06-06 (Nov. 2005), at 24; http://www.dhs.gov/interweb/assetlibrary/OIG_06-06_Nov05.pdf.



# APPENDIX THREE



Case 3:07-cv-03788-SI   Document 15-2   Filed 11/30/2007   Page 9 of 15

9/3/07 CQ Homeland Sec. (Pg. Unavail. Online)
2007 WLNR 17564416

CQ Homeland Security
Copyright 2007 Congressional Quarterly

September 3, 2007

CQ HOMELAND SECURITY

# FBI    Disputes    Security    Risk  in Citizenship Background Check Delays

By Eleanor Stables, CQ Staff

The FBI disagrees with a recent Homeland Security Department assessment that says
delays in the bureau's background checks for naturalization applicants presents a
national **security   risk** .

"Current mechanisms for conducting immigration background checks are backed up,
slowing processing times and endangering national security," DHS said in an August
announcement of stepped-up immigration enforcement efforts. The FBI and U.S.
Citizenship and Immigration Services (CIS)  are working together on a variety of
projects designed to streamline existing processes so as to reduce waiting times
without sacrificing security," the assessment said.

FBI spokesman Paul Bresson said in an interview that delays in the background
checks are not a national **security risk**. If someone is a threat to national
security, an FBI field office or joint terrorism task force will "know where they
are, they're not slipping through the cracks," he said. Identifying a terrorist in
our midst and doing a background check for another agency are "two totally
different processes," he said. For example, if a person were involved in financing
terrorism and applied for citizenship, an FBI field office or joint terrorism task
force would be aware of that, according to Bresson.

The background checks "can be very labor intensive" because many people have
similar names, and some of the work is done manually not electronically, Bresson
said. The FBI is testing technology to automate name checks, and by 2010 aims to
build a new central records database that will digitize paper files from 56 field
offices to make information more accessible. The agency is also drafting a proposed
increase in its fee for the background checks, which should help reduce the
backlog, Bresson said.

CIS spokesman Bill Wright said in an e-mail to CQ Homeland Security that DHS is
hiring "a substantial number of new analysts dedicated to completing name checks
requested by CIS" and is looking at other ways to improve the process. "Backlogs
and delays can create significant public safety and national **security risks** as
applicants remain in the U.S. unscreened while their applications are pending," he
said.

USCIS Ombudsman Prakash Khatri agrees that delays in processing FBI name checks are

©  2007 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-03768-SI   Document 15-2   Filed 11/30/2007   Page 10 of 15

a national **security risk**. FBI name checks for USCIS "may be the single biggest obstacle to the timely and efficient delivery of immigration benefits, and the problem of long-pending FBI name check cases worsened" in the past year, Khatri wrote in his 2007 annual report. The delays in the background checks may compromise security, as they extend the time a potential criminal or terrorist remains in the country, Khatri said in an interview.

"If they're a threat . . . I'd like to see them removed," he said.

Khatri said the FBI could decrease the backlog by further automating the checks but also by narrowing the background checks. "Other more efficient, automated criminal and security checks that USCIS initiates" could be used as effectively as FBI checks, he says in his report.

USCIS does not request that the FBI prioritize certain name checks, such as those of individuals who are from or have traveled frequently to a country designated as a state sponsor of terrorism, according to Khatri's report.

"We can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin," USCIS said in a 2006 fact sheet on the background checks.

Bresson said the FBI has not requested the authority to prioritize some background checks. "We're doing this on behalf of other agencies so we don't set the policy for them," but an agency could request that the FBI prioritize certain applications, he said. USCIS did not comment on whether it intends to make such a request.

The FBI is currently processing more applications than it receives, but the backlog remains because USCIS resubmitted 2.7 million background checks with additional requirements shortly after the Sept. 11 attacks. The FBI said it now completes 90 percent of the USCIS checks within 60 days; it received approximately 2,761,000 requests for background checks from 70 agencies and processed 2,785,000 between October 1, 2006 and June 17, 2007, Bresson said.

 Eleanor Stables can be reached at estables@cq.com.

Source: CQ Homeland Security
©2007 Congressional Quarterly Inc. All Rights Reserved.

                      ---- INDEX REFERENCES ----

COMPANY: US CITIZENSHIP AND IMMIGRATION SERVICES; FURR S RESTAURANT GROUP INC; CONGRESSIONAL QUARTERLY INC; CHEROKEE INFORMATION SERVICES INC

NEWS SUBJECT: (World Organizations (1IN77); CIS (1CI65); International Terrorism (1IN37); Sept 11th Aftermath (1SE05))

INDUSTRY: (Security Systems & Services (1SE50); Homeland Security (1HO11); Business Services (1BU80); Security (1SE29))

Language:  EN

OTHER INDEXING:  (CIS; CONGRESSIONAL QUARTERLY INC; CQ HOMELAND SECURITY; DHS; FBI; .

         ©  2007 Thomson/West. No Claim to Orig. US Gov. Works.



# APPENDIX FOUR





USPD
9/21/07

U.S. Department of Justice

Federal Bureau of Investigation
Washington, D.C. 20535

### Privacy Act Request

The following information is necessary in order to file a Freedom of Information-Privacy Acts (FOIPA) request.

Full Name: _Azin Mortazavi_

Aliases used: _____

Current Address: ━━━━━━━━━━━━━━━━━━━━━━━━

_Oakland CA 94619_

Date of Birth: ━━━ _-82_    Place of Birth: _Rafsanjan - Iran_

Daytime Telephone Number: ━━━━━━━━━━━━━━━

Social Security Number (optional): ━━━━━━━━━━━

You may also wish to provide prior addresses, employments, etc., which you believe may assist the FBI in locating the information you seek:

_Alien registration number A098 750 617_

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Signature _Azin Mortazavi_    Date _Sep 21- 07_

Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place.

A Legible and original signature is required.

(12)



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

## Privacy Act Request Instructions

- Provide your complete name and mailing address.

  (Telephone, Fax and email addresses are optional.)

- Provide any identifying data that will help us locate information about you, for example your date and place of birth, social security number, former addresses or localities.

- If you are interested in records pertaining to a particular incident you were involved in, please describe it.

- You **must** sign your request and have it **notarized** **or state**, "Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000." You may use the:

❑   **Privacy Act Request Form**

- State how much you are willing to pay for duplication fees if any are assessed.

- Mail your request to:   Federal Bureau of Investigation
  Record Information/Dissemination
    Section (RIDS)
  Service Request Unit, Room 6359
  935 Pennsylvania Avenue, N.W.
  Washington, D.C.  20535



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

August 7, 2007

MR. AZIN MORTAZAVI

OAKLAND, CA 94619

Request No.: 1086926- 000
Subject: MORTAZAVI, AZIN

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters.  No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C.  20530-0001, within sixty days from the date of this letter.  The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal."  Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

(14)

# FBI FILE FACT SHEET

- The primary function of the FBI is law enforcement.
  **The FBI does not keep a file on every citizen of the United States** .

- **The FBI was not established until 1908 and we have very few records prior to the 1920's.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, foreign counter-intelligence, organized crime/drugs, violent crime, white-collar crime, applicants, and civil rights.

- **The FBI does not issue clearances or nonclearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should write directly to that entity.

- **An FBI identification record or "rap sheet" is NOT the same as an FBI "file"** - it is simply a listing of information taken from fingerprint cards submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Each request must have proof of identity which shall consist of **name, date and place of birth and a set of rolled-ink fingerprint impressions** placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus **payment of $18.00** in the form of a certified check or money order, payable to the Treasury of the United States.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index to identify **any** information contained in FBI records that may be associated with an individual and provides the results of that search to the requesting Federal, State or local agency. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine whether it is applicable to the individual in question.

- The Record/Information Dissemination Section/Freedom of Information-Privacy Acts **(FOIPA)** search for records provides copies of FBI files relevant to a FOIPA request for information. FOIPA provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject name, event, activity, business, or event is searched to determine whether there is an investigative file associated with the subject. This is called a "main file search" and differs from The **NNCP** search.

**FOR GENERAL INFORMATION ABOUT THE FBI,
CHECK OUT OUR WEBSITE AT
http://www.fbi.gov**

3-23-04

