SCOTT N. SCHOOLS (SC 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6730
FAX: (415) 436-6927

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AZIN MORTAZAVI, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ROSEMARY MELVILLE, District Director ) <br> USCIS San Francisco District Office; ) <br> EMILIO T. GONZALEZ, Director, USCIS; ) <br> MICHAEL CHERTOFF, Secretary, ) <br> Department of Homeland Security; ) <br> MICHAEL B. MUKASEY,* Attorney ) <br> General, Department of Justice ) <br> ) <br> Defendants. ) <br> _____ ) | No. C 07-3768 SI <br><br> DEFENDANTS' REPLY AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT <br><br> No Hearing By Stipulation and Court Order |

## I. INTRODUCTION

Defendants hereby oppose Plaintiff's Motion for Summary Judgment. Defendant Mukasey is not properly a party to the action; accordingly, summary judgment should be granted in his favor. Furthermore, the delay of less than two years in this case is not unreasonable. Thus, summary judgment in favor of the remaining Defendants is appropriate.

///

///

*Pursuant to Fed. R. Civ. P. 25(d)(1), Michael B. Mukasey is substituted for his predecessor, Peter D. Keisler, as the United States Attorney General.

DEFENDANTS' REPLY AND OPPOSITION
C 07-3768 SI                               1

## II.    ANALYSIS

A.    THE COURT LACKS JURISDICTION OVER THE ATTORNEY GENERAL

1.    The FBI Does Not Have a Statutory Duty to Process Name Checks

Plaintiff's contention that 28 U.S.C. § 534 requires the Federal Bureau of Investigation ("FBI") to process name checks is based on a mistaken assumption that name checks involve the review of criminal history record information. As explained further below, "name checks" involve review of the FBI's <u>investigative</u> files. These files are completely separate and distinct from the criminal history records that are the subject of 28 U.S.C. § 534 and the regulations that implement that statute.

The name checks performed by the FBI at the request of the U.S. Citizenship and Immigration Services ("USCIS") consist of reviews of FBI investigative records from the FBI's Central Records System. The FBI's Central Records System includes the investigative records relating to the hundreds of federal violations over which the FBI has investigative jurisdiction, and it includes information on subjects, suspects, victims, witnesses and close relatives and associates who are relevant to an investigation. See Doe v. FBI, 936 F.2d 1346, 1348 n.2 (D.C. Cir. 1991) (explaining that the Central Records System is the FBI's central filing system, containing the agency's investigative records on various individuals and subject matters).

Thus, if during the course of an FBI criminal or intelligence investigation, the FBI obtains relevant information regarding an individual, and such information is included in a written report, such information will be found in an investigative file in the FBI's Central Records System. For example, during the course of an investigation into drug trafficking, the FBI may be told by an informant that a certain alien is involved in transporting illegal drugs. That information may be included in a report of the FBI agent's interview with the informant. That report would be placed in the investigative file, which is part of the Central Records System. If that alien subsequently seeks to adjust his status, and if United States Citizenship and Immigration Services ("USCIS") requests a name check, the FBI would likely locate that information through a search of the Central Records System and report that derogatory information to USCIS.

Criminal history record information, such as records of arrests and convictions, is separate

1  and distinct from the raw investigative reports and other types of investigative information contained
2  in the FBI's Central Records System. Criminal history record information is contained in systems
3  of records other than the Central Records System, such as the Fingerprint Identification Records
4  System ("FIRS") and the Interstate Identification Index System ("III System"), which is accessible
5  through the National Crime Information Center ("NCIC"). See 28 C.F.R. § 20.3(l)-(n) (defining the
6  FIRS, the III System, and the NCIC, respectively, for purposes of the regulations regarding
7  exchange of criminal history record information); and 28 C.F.R. § 20.33 (discussing the
8  dissemination of criminal history record information); see also
9  http://www.fbi.gov/hq/cjisd/ncic_brochure.htm (describing the NCIC) (last visited Dec. 7, 2007).
10 Thus, to continue the hypothetical cited in the previous paragraph, where an alien was alleged to be
11 involved in drug trafficking, it may be that the alien was never arrested. In that situation, a search
12 of only a criminal history record would result in no records, whereas the name check would locate
13 the investigative records.

14      With the distinction in mind between investigative records, which are searched during the
15 FBI name check, and criminal history records, which are not, it becomes clear that 28 U.S.C. § 534
16 does not cover investigative files. By its terms, and as its title suggests, § 534 is concerned with the
17 acquisition, preservation, and exchange of identification and criminal history record information,
18 not information from the FBI's investigative files. See Menard v. Saxbe, 498 F.2d 1017, 1029 (D.C.
19 Cir. 1974) (discussing legislative history of § 534 and noting that § 534(a)'s current language was
20 intended to restate, without substantive change, the initial statutory authorization to acquire and
21 preserve "criminal identification and other crime records").[1] The regulations which implement

---

[1] As indicated in Menard, the phrase "and other records" at the end of § 534(a)(1) cannot reasonably be read to be a broad expansion of the statute which would engulf the FBI's raw investigative records. Menard, 498 F.2d at 1029; see also United States Dept. of Justice v. Reporter Committee for Freedom of Press, 489 U.S. 749, 751-52 (1989) (discussing the history behind 5 U.S.C. § 530, the predecessor to § 534, and the establishment of the FBI's Identification Division for the purpose of "acquiring, collecting, classifying, and preserving criminal identification and other crime records"). Applying the statutory canon of ejusdem generis, the term "other records" necessarily means records similar to those listed. See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-115 (2001) (canon of ejusdem generis states that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects

§ 534 clearly do not contemplate the exchange of investigative information. The Appendix to the implementing regulations explains that the definition of "criminal history record information" with respect to 28 C.F.R § 20.3(d)

> does not extend to other information contained in criminal justice agency reports. Intelligence or investigative information (e.g., suspected criminal activity, associates, hangouts, financial information, and ownership of property and vehicles) is not included in the definition of criminal history information.

28 C.F.R. § 20, App. (emphasis added). The legislative history behind the original statute is particularly instructive:

> There are two classes of information that is gathered. One is criminal records, and another is the information that is gathered about criminals that is not a matter of record. . . . That information is gathered for the department itself and its agents, in order that they more effectually do their work.

Menard, 498 F.2d at 1029 n.42 (quoting 72 Cong. Rec. 1989 (71st Cong., 2d Sess, Jan. 20, 1930) (Statement of Rep. Cochran). Moreover, there is no suggestion in any statute, or regulation of which Defendants are aware that suggests that 28 U.S.C. § 534 compels the FBI to share investigative information found within the FBI's Central Records System.[2]

### 2.     8 U.S.C. § 1105(b)(1) Does Not Include Name Checks

Plaintiff's contention that 8 U.S.C. § 1105(b)(1) is relevant to name checks is based on the same misunderstanding that underlies her arguments regarding 28 U.S.C. § 534. As stated above, name checks are checks of the investigative files in the FBI's Central Records System. In contrast, 8 U.S.C. § 1105(b)(1) refers specifically to an obligation to provide access to the information maintained in the NCIC. See 8 U.S.C. § 1105(b)(1) ("shall provide the Department of State and

---

similar in nature to those objects enumerated by the preceding specific words.") (internal citation omitted). Moreover, sub-sections 534(a)(2) and (3) would appear to be superfluous if investigative records were already covered under § 534(a)(1).

[2]This background also reveals the fallacy of Plaintiff's reliance on the "no record found" response to her Freedom of Information Act ("FOIA") request, apparently as evidence that no such records exist. Plaintiff's Motion, p. 9. Because the records contained in the Central Records System are investigatory files, they are not covered by her request. See 5 U.S.C. § 552(b)(7) (stating that records or information compiled for law enforcement purposes is exempt from FOIA).

DEFENDANTS' REPLY AND OPPOSITION
C 07-3768 SI                              4

Service access to the criminal history record information contained in the National Crime Information Center . . . ."). The NCIC is totally separate and distinct from the FBI's Central Records System. The NCIC is a computerized database available to virtually every law enforcement agency in the United States, containing property files (such as files on boats, guns, and license plates) and person files (such as the Convicted Sexual Offender Registry, Foreign Fugitives, and Identity Theft files). As explained above, the III System, which contains automated criminal history record information, is accessible through the NCIC. See http://www.fbi.gov/hq/cjisd/ncic_brochure.htm; see also Privacy Act of 1974; Notice of Modified Systems of Records, 64 Fed. Reg. 52,343, 52,343-44 (Sept. 28, 1999). In contrast, the Name Check Program involves a search of investigative records in the Central Record System, not the NCIC. Thus, contrary to Plaintiffs' argument, 8 U.S.C. § 1105(b)(1) does not address the Central Records System.[3]

### 3. The FBI Processes Name Checks Pursuant to an Agreement with USCIS, Not Pursuant to a Statutory Duty

The FBI performs name checks for USCIS pursuant to an agreement between the agencies. However, Defendants are not aware of a legal requirement that the FBI agree with USCIS to perform the name checks. The FBI's discretionary authority to release information from its Central Records System is set forth in the routine uses published as part of the Privacy Act Notice for the Central Records System. See 5 U.S.C. § 552a(b)(3) (allowing dissemination of records pursuant to a published routine use). One of the routine uses published in the Privacy Act Notice for the Central Records System is that

> information from this system may be disclosed as a routine use to any Federal agency where the purpose in making the disclosure is compatible with the law enforcement purpose for which it was collected, e.g., . . . to assist the recipient agency in the performance of any authorized function where access to records in this system is declared by the recipient agency to be relevant to that function.

Privacy Act of 1974, Notice of Modified Systems of Records, 63 Fed. Reg. 8,659, 8,682

---

[3]Plaintiff also cites 8 U.S.C. § 1103(a)(1), which has no applicability here. The immigration courts, which decide issues of removability and asylum, remain under the U.S. Department of Justice and the direction of the Attorney General. 8 C.F.R. § 1003.1(a)(1). Plaintiff's application was submitted to USCIS, and is not within the jurisdiction of the immigration courts. 8 C.F.R. § 245.2(a)(1).

DEFENDANTS' REPLY AND OPPOSITION
C 07-3768 SI                                      5

(Feb. 20, 1998) (emphasis added). Furthermore, in 1990, Congress provided that if the FBI so desired, it could establish and collect fees to process name checks:

> for fiscal year 1991 and hereafter the Director of the Federal Bureau of Investigation <u>may</u> establish and collect fees to process fingerprint identification records and name checks for non-criminal justice, non-law enforcement employment and licensing purposes and for certain employees of private sector contractors with classified Government contracts, and notwithstanding the provisions of 31 U.S.C. 3302, credit such fees to this appropriation to be used for salaries and other expenses incurred in providing these services, and that the Director of the Federal Bureau of Investigation <u>may</u> establish such fees at a level to include an additional amount to establish a fund to remain available until expended to defray expenses for the automation of fingerprint identification services and associated costs . . . .

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1991, Pub. L. 101-515, 104 Stat. 2102, 2112 (emphasis added). The use of the word "may" indicates that the name check program is discretionary, and that Congress did not impose any duty on the part of the FBI to perform such acts. <u>Pacific Marine Conservation Council, Inc. v. Evans</u>, 200 F. Supp. 2d 1194, 1201 (N.D. Cal. 2002) (describing "may" as discretionary language).

For this reason, Defendants respectfully ask the Court to join the vast majority of courts across the nation, and recognize that the FBI is not properly named in litigation seeking adjudication of applications for immigration benefits. See <u>Liang v. Attorney General of the United States</u>, No. 07-cv-02349 CW, slip. op., at 6-7 ("the APA does not confer jurisdiction over the FBI in connection with an action for judicial review of the USCIS's failure to act on an adjustment of status application") (N.D. Cal. Oct. 30, 2007); <u>Clayton v. Chertoff, et al.</u>, No. 07-cv-02781-CW, slip. op., at 4-7 (N.D. Cal. Oct. 1, 2007) (dismissing non-Homeland Security defendants because neither the FBI nor the Attorney General have the statutory obligation or authority to adjudicate adjustment applications); <u>Eldeeb v. Chertoff</u>, No. 07-cv-236-T-17EAJ, 2007 WL 2209231, at *21 (M.D. Fla. July 30, 2007) (dismissing the FBI, stating that the duty owed by the FBI is to USCIS, not the plaintiff); <u>Konchitsky v. Chertoff</u>, No. C-07-00294 RMW, 2007 WL 2070325, at *6-7 (N.D. Cal. July 13, 2007) (stating "courts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks . . . have overwhelmingly concluded that they do not."); <u>Yan v. Mueller</u>, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the

1  FBI's <u>exercise of discretion</u> in determining the timing for conducting the many name check requests
2  that it receives and the manner in which to conduct those checks." (emphasis added)); <u>Dmitriev v.
3  Chertoff</u>, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007) (dismissing the FBI
4  without comment on jurisdiction); <u>Li v. Chertoff, et al.</u>, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007)
5  ("Additionally, Plaintiff has not pointed to any statute or regulation requiring the FBI to complete
6  her name check in any period of time, reasonable or not."); <u>Sozanski v. Chertoff, et al.</u>, No. 06-cv-
7  0993, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack
8  jurisdiction to compel the FBI to perform name checks in adjustment of status cases).

### B.   <u>THE DELAY IS REASONABLE</u>

Plaintiff argues that the delay of less than two years is unreasonable. She mistakenly relies on 8 U.S.C. § 1571 in support of her argument. Plaintiff's Motion, p. 6. However, the statute expresses a "sense of Congress," and is not a mandate. 8 U.S.C. § 1571. The language is merely precatory, and does not impose a deadline on Defendants. See <u>Wright v. City of Roanoke Redevelopment and Housing</u>, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not create a substantive right); <u>Orkin v. Taylor</u>, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create individual rights, or, for that matter, any enforceable law.").

Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case. The events of September 11, 2001 marked a dramatic shift in issues involving national security. Courts have taken note of this change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies to be considerably more careful and thorough in their investigations than they were in the past. In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

<u>Razaq v. Poulos</u>, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007).

Plaintiff's argument that her case has exceeded normal processing times is equally

unavailing. Plaintiff's Motion, p. 6 n.3.  The processing times posted on the USCIS website apply to ordinary cases, and are not applicable here, where Plaintiff's name check evidently requires more intensive review.  <u>Eldeeb</u>, 2007 WL 2209231, at *5.  In essence, comparing her case to those processed within "normal" processing times equates to comparing apples with oranges.  Plaintiff's case is simply not ordinary.  Instead, she falls in the

Plaintiff also errs in relying on 8 C.F.R. § 103.2(b)(18) for the proposition that the delay in her case is unreasonable.  Plaintiff's Motion, p. 7. USCIS has not invoked that regulation here, and it is inapplicable.[4]  <u>See</u> Defendants' Motion, Exh. A.  The regulation applies only where the District Director learns of an ongoing investigation that relates to the applicant's eligibility. 8 C.F.R. § 103.2(b)(18).  Here, there has been no such determination.  Instead, USCIS has exercised its discretion to require the completion of a background check prior to rendering a decision on any applications for immigration benefits. Defendants' Motion, Exh. A, p. 1 ¶ 3.  The check is not an investigation; rather, as discussed above, the name check constitutes a review of investigatory files. <u>Eldeeb</u>, 2007 WL 2209231, at *2.  USCIS monitors the case on a weekly basis to ensure that the case will be processed as soon as possible after the result of the name check is received. Defendants' Motion, Exh. A, p. 4 ¶ 14.

### III. CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to deny Plaintiff's Motion, dismiss Defendant Mukasey, and grant the remaining Defendants' motion for summary judgment as a matter of law.

Dated: December 7, 2007

Respectfully submitted,

SCOTT N. SCHOOLS  
United States Attorney

　　　　/S/　　　　  
MELANIE L. PROCTOR  
Assistant United States Attorney  
Attorneys for Defendants

---

[4] The mention of the regulation in Defendants' Motion was intended to demonstrate the discretionary nature of the adjudication process.